**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ISAIAH POTTER, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>VERRICA PHARMACEUTICALS INC., TED WHITE, and BRIAN DAVIS,<br><br>      Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Isaiah Potter ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Verrica Pharmaceuticals Inc. ("Verrica" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Verrica; and (c) review of other publicly available information concerning Verrica.

## <u>NATURE OF THE ACTION AND OVERVIEW</u>

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Verrica securities between September 16, 2019 and June 29, 2020, inclusive (the "Class Period"), seeking to pursue claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Verrica is a dermatology therapeutics company that develops treatments for people living with skin diseases. Its lead product candidate, VP-102, is a drug-device combination of a topical solution of cantharidin administered through the Company's single-use precision applicator. The Company is initially developing VP-102 for the treatment of molluscum contagiosum, or molluscum, a highly contagious and primarily pediatric viral skin disease, and common warts.

3.      On June 29, 2020, Verrica disclosed receipt of a letter from the U.S. Food and Drug Administration ("FDA") regarding the Company's New Drug Application ("NDA") for VP-102 for the treatment of molluscum contagiosum. The letter identified certain deficiencies

that preclude discussion of labeling and post-marketing requirements. Moreover, according to the Company, the FDA's information requests have included "specific request related to a potential safety issue with the applicator that could arise if the instructions for use were not properly followed."

4.     On this news, the Company's share price fell $3.06, or nearly 22%, to close at $11.01 per share on June 30, 2020, on unusually heavy trading volume.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's proprietary applicator used for VP-102 posed certain safety risks if the instructions were not properly followed; (2) that, as a result, Verrica would incorporate certain user features to mitigate the safety risk; (3) that the addition of the user feature would require additional testing for stability supportive data; (4) that, as a result of the foregoing, regulatory approval for VP-102 was reasonably likely to be delayed; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

6.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

11.    Plaintiff Isaiah Potter, as set forth in the accompanying certification, incorporated by reference herein, purchased or otherwise acquired Verrica securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Verrica is incorporated under the laws of Delaware with its principal executive offices located in West Chester, Pennsylvania. Verrica's common stock trades on the NASDAQ exchange under the symbol "VRCA."

13.    Defendant Ted White ("White") was, at all relevant times, the President and Chief Executive Officer of the Company.

14.    Defendant Brian Davis ("Davis") has been the Chief Financial Officer of the

Company since October 18, 2019.

15.     Defendants White and Davis (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Verrica is a dermatology therapeutics company that develops treatments for people living with skin diseases. Its lead product candidate, VP-102, is a drug-device combination of a topical solution of cantharidin administered through the Company's single-use precision applicator. The Company is initially developing VP-102 for the treatment of molluscum contagiosum, or molluscum, a highly contagious and primarily pediatric viral skin disease, and common warts.

## Materially False and Misleading
## Statements Issued During the Class Period

17.     The Class Period begins on September 16, 2019. On that day, Verrica announced

that it had submitted its NDA with the SEC for VP-102 for the treatment of molluscum.

Specifically, the Company stated in a press release, in relevant part:

> Verrica Pharmaceuticals Inc. ("Verrica") (Nasdaq: VRCA), a medical
> dermatology company committed to the development and commercialization of
> novel treatments that provide meaningful benefit for people living with skin
> diseases, today announced that it has submitted a New Drug Application (NDA)
> to the U.S. Food and Drug Administration (FDA) for VP-102 (cantharidin 0.7%
> Topical Solution), a proprietary topical therapy, for the treatment of molluscum
> contagiosum (molluscum). No FDA-approved treatments are currently available
> for molluscum, a common, highly contagious skin disease affecting an estimated
> 6 million people in the United States, primarily children. Without treatment,
> molluscum can persist for an average of 13 months, with some cases remaining
> unresolved for several years.

> "Molluscum is a viral skin infection that is highly contagious, spreads rapidly, and
> is significantly undertreated, with no FDA-approved therapeutic options," said
> Ted White, President and Chief Executive Officer, Verrica. "The NDA
> submission potentially brings us one step closer to our goal of providing patients
> — particularly children and their caregivers — with a safe and effective therapy
> for molluscum with our proprietary single-use applicator. If approved, VP-102
> has the potential to become the standard of care for this disease."

> *The 505(b)(1) NDA is supported by the positive results from two double-blind*
> *Phase 3 trials (CAMP-1 and CAMP-2) that evaluated the safety and efficacy of*
> *VP-102 compared to placebo in patients two years of age and older diagnosed*
> *with molluscum.* The CAMP-1 and CAMP-2 studies enrolled 528 patients in total
> and were conducted at 31 centers in the United States. Each trial demonstrated
> superior efficacy of VP-102 compared to placebo with statistically significant
> differences on the primary endpoint of complete clearance of all treatable
> molluscum lesions. Specific results from CAMP-1 and CAMP-2 demonstrated
> 46% and 54%, respectively, of subjects treated with VP-102 achieved complete
> clearance at day 84, versus 18% and 13% of subjects in the placebo groups
> (p<0.0001). By the end of the trials (Day 84), VP-102 treated subjects had a 69%
> and 83% mean reduction in molluscum lesions, a pre-specified endpoint, in
> CAMP-1 and CAMP-2, respectively, compared to a 20% increase and 19%
> reduction for subjects on placebo. VP-102 was well-tolerated in both trials, with
> no serious adverse events reported in VP-102 treated subjects.

18. On November 27, 2019, Verrica announced that the NDA for VP-102 had been

accepted for filing by the FDA. In a press release, the Company stated, in relevant part:

> Verrica Pharmaceuticals Inc. ("Verrica") (Nasdaq: VRCA), a medical dermatology company, today announced that its New Drug Application (NDA) for VP-102 (cantharidin 0.7% Topical Solution), a proprietary topical therapy for the treatment of molluscum contagiosum (molluscum), has been accepted for filing by the U.S. Food and Drug Administration (FDA). The Prescription Drug User Fee Act (PDUFA) goal date assigned by the FDA for this NDA is July 13, 2020.
>
> "There are no FDA-approved treatments currently available to patients diagnosed with molluscum, the majority of whom are children, leaving caregivers to choose between a wait-and-see approach or treatments with unproven efficacy," said Ted White, President and Chief Executive Officer, Verrica. "Left untreated, molluscum is easily transmitted, with lesions persisting an average of 13 months, and molluscum can last up to several years, as seen in our clinical trials. The acceptance of this NDA for review is the next step toward bringing patients and their caregivers a safe and effective topical therapy for this common, highly contagious viral skin disease that carries a substantial social stigma. We look forward to working closely with the FDA during this review period."
>
> The NDA is based on positive results from two identical Phase 3 randomized, double-blind, multicenter clinical trials (CAMP-1 and CAMP-2) that evaluated the safety and efficacy of VP-102 compared to placebo in patients two years of age and older diagnosed with molluscum. CAMP-1 was conducted under a SPA (Special Protocol Assessment) with the FDA. In both trials, a clinically and statistically significant number of patients treated with VP-102 met the primary endpoint of complete clearance of all treatable molluscum lesions.
>
> VP-102 was well-tolerated in both trials, with no serious adverse events reported in VP-102-treated subjects.

19. On March 13, 2020, the Company filed its annual report on Form 10-K for the

period ended December 31, 2019 (the "2019 10-K"). Regarding the administration of VP-102,

Verrica stated, in relevant part:

> VP-102 [is] a proprietary drug-device combination of a novel 0.7% w/v topical solution of cantharidin administered through our single-use precision applicator. . . . *Our proprietary single-use applicator allows for precise application to each lesion. Our applicator contains a sealed glass ampule providing long-term room temperature stability without the changes in concentration due to evaporation seen in compounded formulations.*

\*        \*        \*

***VP-102 is designed to be administered to patients via a proprietary applicator by a healthcare professional.*** In the United States, products composed of components that would normally be regulated by different centers at the FDA are known as combination products. Typically, the FDA's Office of Combination Products assigns a combination product to a specific Agency center as the lead reviewer. The FDA determines which center will lead a product's review based upon the product's primary mode of action. Depending on the type of combination product, its approval, clearance or licensure may usually be obtained through the submission of a single marketing application. ***We anticipate that VP-102 will be regulated as a drug, and that the FDA will permit a single regulatory submission seeking approval of VP-102 with the applicator in each indication for which we seek approval.***

20.     Regarding regulatory approval of VP-102 for molluscum, the 2019 10-K stated, in

relevant part:

***Our lead product candidate, VP-102, is being developed for the treatment of molluscum, common warts and external genital warts, for which we are currently conducting clinical trials. If we are unable to successfully develop, receive regulatory approval for and commercialize VP-102 for the treatment of molluscum, common warts, external genital warts or any other indications, or successfully develop any other product candidates, or experience significant delays in doing so, our business will be harmed.***

We currently have no products that are approved for commercial sale. We have only one product candidate, VP-102 for which we have conducted clinical trials. We have completed two pivotal Phase 3 clinical trials and submitted a New Drug Application, or (NDA) for VP-102 for the treatment of molluscum in the U.S. Our NDA is presently under review by FDA and there can be no assurance that we will receive approval. . . . Our ability to generate revenue from our product candidates, will depend heavily on their successful development, regulatory approval and eventual commercialization of these product candidates. The success of VP-102, VP-103 or any other product candidates that we develop or otherwise may acquire will depend on several factors, including: timely and successful completion of preclinical studies and our clinical trials;

- successful development of, or making arrangements with third-party manufacturers for, our commercial manufacturing processes for any of our product candidates that receive regulatory approval;

- receipt of timely marketing approvals from applicable regulatory authorities;

- launching commercial sales of products, if approved;

- acceptance of our products, if approved, by patients, the medical community and third-party payors, for their approved indications;

- our success in educating physicians and patients about the benefits, administration and use of VP-102 or any other product candidates, if approved;

- the prevalence and severity of adverse events experienced with VP-102 or our other product candidates;

- the availability, perceived advantages, cost, safety and efficacy of alternative treatments for molluscum and/or common warts or any other indications which we may pursue for VP-102 or any other product candidates;

- our ability to produce VP-102 or any other product candidates on a commercial scale;

- obtaining and maintaining patent, trademark and trade secret protection and regulatory exclusivity for our product candidates and otherwise protecting our rights in our intellectual property portfolio;

- maintaining compliance with regulatory requirements, including current good manufacturing practices, or cGMPs;

- competing effectively with other procedures; and

- maintaining a continued acceptable safety, tolerability and efficacy profile of the products following approval.

Whether regulatory approval will be granted is unpredictable and depends upon numerous factors, including the substantial discretion of the regulatory authorities. Our product candidates' success in clinical trials is not guaranteed, and even if clinical trials are successful, it will not guarantee regulatory approval. Following submission of an NDA, it may not be accepted for substantive review, or even if it is accepted for substantive review, *the FDA or other comparable foreign regulatory authorities may require that we conduct additional studies or clinical trials, provide additional data, take additional manufacturing steps, or require other conditions before they will reconsider or approve our application*. If the FDA or other comparable foreign regulatory authorities require additional studies, clinical trials or data, we would incur increased costs and delays in the marketing approval process, which may require us to expend more resources than we have available. In addition, the FDA or other comparable foreign regulatory authorities may not consider sufficient any additional required studies, clinical

trials, data or information that we perform and complete or generate, or we may decide to abandon the program.

It is possible that VP-102, VP-103 or any of our other product candidates we may develop or otherwise acquire will never obtain regulatory approval, even if we expend substantial time and resources seeking such approval. If we do not achieve one or more of these factors in a timely manner or at all, we could experience significant delays or an inability to successfully commercialize our product candidates, which would harm our business.

21.     As to the applicator, which could affect regulatory approval, the 2019 10-K stated, in relevant part:

**VP-102 is a drug-device combination involving a proprietary applicator, which may result in additional regulatory and other risks.**

VP-102 is a drug-device combination product for administration of our cantharidin formulation through our proprietary applicator. We may experience delays in obtaining regulatory approval of VP-102 given the increased complexity of the review process when approval of a drug and a delivery device is sought under a single marketing application. VP-102 will be regulated as a drug-device combination product, which requires coordination within the FDA and similar foreign regulatory agencies for review of the product candidate's device and drug components. We have filed a single marketing application for the approval of a drug-device combination product, with guidance by the FDA. Although the FDA and similar foreign regulatory agencies have systems in place for the review and approval of combination products such as ours, we may experience delays in the development, approval, and commercialization of our product candidate due to regulatory timing constraints and uncertainties in the product development and approval process, the inherent complexities of combination products, as well as coordination between two different centers within FDA responsible for review of the different components of the combination product.

Failure to successfully develop or supply the device, delays in or failure of the studies conducted by us, our collaborators, or third-party providers, or failure of our company, our collaborators, or third-party providers to obtain or maintain regulatory approval or clearance of the device component of VP-102 could result in increased development costs, delays in or failure to obtain regulatory approval, and associated delays in VP-102 reaching the market. Further, failure to successfully develop or supply the device, or to gain or maintain its approval, could adversely affect sales of VP-102.

22.     The above statements identified in ¶¶ 17-21 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's proprietary applicator used for VP-102 posed certain safety risks if the instructions were not properly followed; (2) that, as a result, Verrica would incorporate certain user features to mitigate the safety risk; (3) that the addition of the user feature would require additional testing for stability supportive data; (4) that, as a result of the foregoing, regulatory approval for VP-102 was reasonably likely to be delayed; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

23.      On June 29, 2020, after the market closed, Verrica disclosed receipt of a letter from the U.S. Food and Drug Administration ("FDA") regarding the Company's New Drug Application ("NDA") for VP-102 for the treatment of molluscum contagiosum. The letter identified certain deficiencies that preclude discussion of labeling and post-marketing requirements. Moreover, according to the Company, the FDA's information requests have included "specific request related to a potential safety issue with the applicator that could arise if the instructions for use were not properly followed." Specifically, the Company's press release stated, in relevant part:

> Verrica Pharmaceuticals Inc. ("Verrica") (Nasdaq: VRCA), a dermatology therapeutics company developing medications for viral skin diseases requiring medical interventions, today announced that, on June 24, 2020, the Company received a letter from the U.S. Food and Drug Administration (FDA) as part of the FDA's ongoing review of the Company's New Drug Application (NDA) for VP-102 (cantharidin 0.7% topical solution), Verrica's lead product candidate for the treatment of molluscum contagiosum. *The letter states that there are deficiencies that preclude discussion of labeling and post-marketing requirements/commitments at this time.* The letter further states that the notification does not reflect a final decision on the information under review. In a letter dated November 26, 2019, the FDA had assigned a Prescription Drug User Fee Act ("PDUFA") goal date of July 13, 2020 for completion of its review of the

NDA.

The FDA's letter does not identify any specific items. ***But, the Company notes that information requests from the FDA during the NDA review have focused on CMC aspects of the drug-device combination.*** Verrica's ability to address these CMC-related requests, however, was significantly impacted in large part by the COVID-19 pandemic.

***The requests include, but are not limited to, a specific request related to a potential safety issue with the applicator that could arise if the instructions for use were not properly followed. In response, the Company incorporated an additional user feature into the applicator to address that issue. The addition of that user feature, however, has affected human factors testing as well as requiring additional supportive stability data on the fully assembled device incorporating such feature.*** The Company believes that both its long-term and registration stability data with the ampule, and the as-submitted applicator, support significant shelf life and stability for VP-102.

The Company anticipates interactions with, and additional communication from, the FDA and intends to work with the FDA to resolve and address any items as quickly as possible.

Notwithstanding the pandemic or the CMC-related requests that have arisen during the review cycle, the Company believes that the positive results from its two double-blind Phase 3 trials (CAMP-1 and CAMP-2) that evaluated the safety and efficacy of VP-102 compared to placebo in patients two years of age and older diagnosed with molluscum indicates that VP-102 remains viable for FDA approval.

24.     On this news, the Company's share price fell $3.06, or nearly 22%, to close at $11.01 per share on June 30, 2020, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Verrica securities between September 16, 2019 and June 29, 2020, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in

which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Verrica's common shares actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.   Millions of Verrica common stock were traded publicly during the Class Period on the NASDAQ.   Record owners and other members of the Class may be identified from records maintained by Verrica or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Verrica; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31.     The market for Verrica's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Verrica's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Verrica's securities relying upon the integrity of the market price of the Company's securities and market information relating to Verrica, and have been damaged thereby.

32.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Verrica's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Verrica's business, operations, and prospects as alleged herein.

33.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Verrica's financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## **LOSS CAUSATION**

34.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35.     During the Class Period, Plaintiff and the Class purchased Verrica's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## **SCIENTER ALLEGATIONS**

36.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Verrica, their control over, and/or receipt and/or modification of Verrica's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Verrica, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

37.    The market for Verrica's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Verrica's securities traded at artificially inflated prices during the Class Period.  On November 26, 2019, the Company's share price closed at a Class Period high of $17.43 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Verrica's securities and market information relating to Verrica, and have been damaged thereby.

38.    During the Class Period, the artificial inflation of Verrica's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Verrica's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Verrica and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the

Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39.    At all relevant times, the market for Verrica's securities was an efficient market for the following reasons, among others:

(a)    Verrica shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Verrica filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Verrica regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Verrica was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

40.    As a result of the foregoing, the market for Verrica's securities promptly digested current information regarding Verrica from all publicly available sources and reflected such information in Verrica's share price. Under these circumstances, all purchasers of Verrica's securities during the Class Period suffered similar injury through their purchase of Verrica's securities at artificially inflated prices and a presumption of reliance applies.

41.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or

misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Verrica who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act**
**and Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

43.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Verrica's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

45.     The Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Verrica's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct to conceal adverse material information about Verrica's financial well-being and prospects, as specified herein.

47.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Verrica's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Verrica  and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants

was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.      The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Verrica's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.      As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Verrica's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these

defendants during the Class Period, Plaintiff and the other members of the Class acquired Verrica's securities during the Class Period at artificially high prices and were damaged thereby.

51.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Verrica was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Verrica  securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.     By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Verrica within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, Verrica and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: July 14, 2020                                By:  *s/ Lee Albert*
                                                  **GLANCY PRONGAY & MURRAY LLP**
                                                  Lee Albert (PA ID# 046852)
                                                  230 Park Avenue, Suite 530
                                                  New York, NY 10169
                                                  Telephone: (212) 682-5340
                                                  Facsimile: (212) 884-0988
                                                  lalbert@glancylaw.com

                                                  **GLANCY PRONGAY & MURRAY LLP**
                                                  Robert V. Prongay
                                                  Charles H. Linehan
                                                  Pavithra Rajesh
                                                  1925 Century Park East, Suite 2100
                                                  Los Angeles, CA 90067
                                                  Telephone: (310) 201-9150
                                                  Facsimile: (310) 201-9160

                                                  **THE LAW OFFICES OF FRANK R. CRUZ**
                                                  Frank R. Cruz
                                                  1999 Avenue of the Stars, Suite 1100
                                                  Los Angeles, CA 90067
                                                  Telephone: (310) 914-5007

                                                  *Attorneys for Plaintiff Isaiah Potter*

## SWORN CERTIFICATION OF PLAINTIFF

## VERRICA PHARMACEUTICALS INC. SECURITIES LITIGATION

I, Isaiah Potter, certify that:

1.      I have reviewed the Complaint and authorize its filing and/or the filing of a Lead
        Plaintiff motion on my behalf.

2.      I did not purchase the Verrica Pharmaceuticals Inc. securities that are the subject
        of this action at the direction of plaintiff's counsel or in order to participate in any
        private action arising under this title.

3.      I am willing to serve as a representative party on behalf of a class and will testify
        at deposition and trial, if necessary.

4.      My transactions in Verrica Pharmaceuticals Inc. securities during the Class Period
        set forth in the Complaint are as follows:

        (See attached transactions)

5.      I have not sought to serve, nor served, as a representative party on behalf of a
        class under this title during the last three years, except for the following:


6.      I will not accept any payment for serving as a representative party, except to
        receive my pro rata share of any recovery or as ordered or approved by the court,
        including the award to a representative plaintiff of reasonable costs and expenses
        (including lost wages) directly relating to the representation of the class.


I declare under penalty of perjury that the foregoing are true and correct statements.


7/8/2020
_____                      _____
Date                                              Isaiah Potter

**Isaiah Potter's Transactions in Verrica Pharmaceuticals Inc.
(VRCA)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/29/2020 | Bought | 100 | $14.8700 |
| 6/29/2020 | Bought | 30 | $14.8900 |
| 6/29/2020 | Sold | -60 | $10.8700 |
| 6/29/2020 | Sold | -70 | $10.6400 |